UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TIMOTHY L. JEFFERSON et al., <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNOR BILL LEE et al., <br><br> Defendants. | Case No. 3:20-cv-00469 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair E. Newbern |

To: The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

**REPORT AND RECOMMENDATION**

Brothers Timothy L. Jefferson and Andrew L. Jefferson (together, the Jeffersons) filed this civil rights action under 42 U.S.C. § 1983 to address issues arising from their incarceration at the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee. (Doc. Nos. 1, 11.) Defendants Unit Manager Daniel Jenkins and CoreCivic, Inc,[1] have moved for summary judgment on all claims against them. (Doc. No. 43.) The Jeffersons filed a combined response in opposition and cross-motion for summary judgment. (Doc. No. 50.) Jenkins and CoreCivic filed a reply in support of their motion (Doc. No. 55) and a response in opposition to the Jeffersons' motion (Doc. No. 56). Considering the record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that Jenkins and CoreCivic's motion for summary judgment (Doc. No. 43) be granted and that the Jeffersons' motion for summary judgment (Doc. No. 50) be denied.

---

[1] CoreCivic, Inc., is a private for-profit corporation that contracts with the Tennessee Department of Correction to operate TTCC. *See generally Trousdale Turner Correctional Center*, CoreCivic, https://www.corecivic.com/facilities/trousdale-turner-correctional-center (last visited Dec. 20, 2021).

I. **Factual and Procedural Background**[2]

The Jeffersons allege that, on April 29, 2020, Jenkins moved incarcerated persons who had tested positive for COVID-19 from elsewhere in TTCC to the pod where the Jeffersons were housed. (Doc. No. 1.) The Jeffersons state that this resulted in them and others in their pod who were not infected with COVID-19 or who were awaiting diagnostic test results to be exposed to people who had tested positive. (*Id.*) The Jeffersons further allege that they were not given "sanitation materials for maintenance of reasonably sanitary conditions in the[ir] cell" and that 120 people in their pod were required to share only four shower heads. (*Id.* at PageID# 4.)

The Court granted the Jeffersons' motions to proceed *in forma pauperis* and screened their complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A. (Doc. Nos. 8, 9.) The Court found that the Jeffersons had stated colorable Eighth Amendment claims against CoreCivic and against Jenkins in his individual capacity. (Doc. Nos. 8,9.) Those claims were permitted to proceed, and all other claims and defendants were dismissed. (Doc. Nos. 8, 9.)

---

[2] The facts in this Report and Recommendation are drawn from Jenkins and CoreCivic's statement of undisputed material facts (Doc. No. 45); the sworn declarations and exhibits of Jenkins, TTCC Grievance Coordinator Janel Holley, and former TTCC Assistant Warden Vincent Vantell (Doc. Nos. 46–48); grievance forms submitted as exhibits to the Jeffersons' motion for summary judgment (Doc. No. 51-1); the Jeffersons' statement of undisputed material facts (Doc. No. 52) and Jenkins and CoreCivic's response to that statement (Doc. No. 57); and the sworn declarations of Timothy and Andrew Jefferson (Doc. Nos. 53, 54).

The Jeffersons have not filed a response to Jenkins and CoreCivic's statement of undisputed material facts that complies with Local Rule 56.01(c). Under Local Rule 56.01(f), facts asserted in a statement of undisputed material facts are considered undisputed for purposes of summary judgment if the opposing party does not file a timely response. M.D. Tenn. R. 56.01(f) (failure to respond). However, the Jeffersons dispute several of Jenkins and CoreCivic's statements of fact in their declarations (Doc. Nos. 53, 54), exhibits (Doc. No. 55-1), and their own statement of undisputed material facts (Doc. No. 52). Considering the plaintiffs' pro se status, the Court will not deem a fact undisputed if the Jeffersons have made an attempt to dispute it in the record. *See Paul v. Jones*, No. 3:18-01290, 2019 WL 6873905, at *3 (M.D. Tenn. Dec. 17, 2019), *report & recommendation adopted*, 2020 WL 134175 (M.D. Tenn. Jan. 13, 2020) (declining to deem facts undisputed where pro se plaintiff did not make a specific response as required by Local Rule 56.01(c) but took other steps "to bring to the Court's attention the factual matters that he believes are disputed").

The Court entered a scheduling order that required the parties to file any dispositive motions by July 20, 2021. (Doc. No. 33.) On that date, Jenkins and CoreCivic filed a motion for summary judgment (Doc. No. 43); a supporting memorandum of law (Doc. No. 44); a statement of undisputed material facts (Doc. No. 45); the sworn declarations of Jenkins, TTCC Grievance Coordinator Janel Holley, and former TTCC Assistant Warden Vincent Vantell (Doc. Nos. 46–48); and several exhibits (Doc. Nos. 46-1, 48-1–48-4). Jenkins and CoreCivic argue that they are entitled to summary judgment because a reasonable jury would conclude from the undisputed facts that: (1) the Jeffersons did not exhaust their administrative remedies before filing suit; (2) CoreCivic is not liable for any actions taken by Jenkins because CoreCivic did not have an official policy of housing people in a way that exposed them to COVID-19; and (3) Jenkins and CoreCivic were not deliberately indifferent to a substantial risk of serious harm to the Jeffersons. (Doc. No. 44.)

On August 16, 2021, the Jeffersons filed a document titled "Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment, in conjunction with, Plaintiffs' Motion for Summary Judgment." (Doc. No. 50.) They also filed a memorandum of law (Doc. No. 51), an exhibit that included copies of submitted grievance forms (Doc. No. 51-1), a statement of undisputed material facts (Doc. No. 52), and their own sworn declarations (Doc. Nos. 53, 54). The Jeffersons argue that Jenkins and CoreCivic are not entitled to summary judgment because: (1) they exhausted their administrative remedies before filing suit; (2) CoreCivic is liable for Jenkins's conduct because it failed to adequately train him; and (3) CoreCivic and Jenkins were deliberately indifferent to the serious risk posed by the COVID-19 pandemic. (Doc. No. 51.) The Jeffersons also argue that they are entitled to summary judgment because Jenkins and CoreCivic have conceded that the facts underlying the claims in the complaint are true. (*Id.*)

Jenkins and CoreCivic filed a reply in support of their motion for summary judgment (Doc. No. 55), a separate response to the Jeffersons' motion for summary judgment (Doc. No. 56), and a response to the Jeffersons' statement of undisputed material facts (Doc. No. 57). Jenkins and CoreCivic argue that the grievance forms and unsworn statements that the Jeffersons offer to show they exhausted their administrative remedies are not competent summary judgment evidence and could not create a genuine question of fact as to that issue. (Doc. No. 55.) Jenkins and CoreCivic also assert that they "engaged in multiple actions to prevent the spread of the novel COVID-19 virus" which show that they were not deliberately indifferent to the health and safety of those incarcerated at TTCC. (*Id.* at PageID# 324.) Finally, Jenkins and CoreCivic argue that the Jeffersons' motion for summary judgment should be denied because it was filed after the deadline for dispositive motions and does not comply with Federal Rule of Civil Procedure 56 or Local Rule 56.1. (Doc. No. 56.)

**II.      Legal Standard**

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

4

Case 3:20-cv-00469    Document 59    Filed 12/20/21    Page 4 of 11 PageID #: 341

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

Where, as here, the parties have filed cross-motions for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Craig v. Bridges*

*Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

### III. Analysis

#### A. The Jeffersons' Motion for Summary Judgment (Doc. No. 50)

The Jeffersons filed their motion for summary judgment on August 16, 2021, several weeks after the July 20, 2021 deadline to file dispositive motions (Doc. No. 33). While "'a district court has broad discretion to manage its own docket,' such that the court may choose to accept a tardy motion for summary judgment," *Hatchett v. Potluck Enters., Inc.*, 2010 WL 4822431, at *2 (M.D. Tenn. Nov. 19, 2010) (quoting *ACLU of Ky. v. McCreary Cnty.*, 607 F.3d 439, 451 (6th Cir. 2010)), the filing party must show that the failure to file the motion before the deadline was due to excusable neglect, as required by Federal Rule of Civil Procedure 6(b), and show good cause to amend the scheduling order to permit the tardy filing, as required by Federal Rule 16(b), Fed. R. Civ. P. 6(b), 16(b). The Jeffersons have not made either showing. Accordingly, their motion for summary judgment must be denied.

#### B. Jenkins and CoreCivic's Motion for Summary Judgment (Doc. No. 43)

Jenkins and CoreCivic principally argue that they are entitled to summary judgment because the Jeffersons did not exhaust their administrative remedies before filing suit. The Prison Litigation Reform Act (PLRA) requires plaintiffs to exhaust all available administrative remedies, including prison grievance procedures, before filing an action addressing the conditions of their confinement. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014), *aff'd sub nom. Simmons v. Himmelreich*, 578 U.S. 621 (2016). This exhaustion requirement "afford[s] corrections officials time and opportunity to address complaints internally" before litigation. *Porter*, 534 U.S. at 525. To properly exhaust a claim, an incarcerated person must "compl[y] with the grievance procedures

put forward by his correctional institution." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). This includes appealing the grievance to the highest possible administrative level in accordance with the institution's administrative policies and procedures. *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003).

"So long as the prison system has an administrative process that will review a prisoner's complaint . . . the prisoner must exhaust his prison remedies." *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006) (alteration in original) (quoting *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999)). An exception to this rule applies, however, if the process is not available to the incarcerated person. *Ross v. Blake*, 578 U.S. 632, 642 (2016). For a grievance procedure to be deemed available, it must be "'capable of use' to obtain 'some relief for the actions complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). A procedure is not available when (1) officials are unable or consistently unwilling to provide any relief to the aggrieved individuals; (2) the administrative procedure is so opaque that it is practically incapable of use because no ordinary prisoner can successfully navigate the system; or (3) the incarcerated person is thwarted from taking advantage of the system through misrepresentation or intimidation. *Id.* at 643–44. Courts require an incarcerated person to make "'some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Napier v. Laurel Cnty.*, 636 F.3d 218, 223–24 (6th Cir. 2011) (quoting *Braswell v. Corr. Corp. of Am.*, No. 3:08-0691, 2009 WL 2447614, at *7 (M.D. Tenn. Aug. 10, 2009)). If such efforts are shown, courts analyze "whether an inmate's efforts to exhaust were sufficient under the circumstances." *Id.* at 224.

Defendants bear the burden of asserting and proving that a plaintiff failed to exhaust administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007) ("failure to exhaust is an

affirmative defense under the PLRA."). Accordingly, summary judgment in the defendants' favor on the grounds that a plaintiff failure to exhaust administrative remedies "is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). If this burden is met, the plaintiff is required "to present 'significant probative evidence' to defeat the motion for summary judgment on this ground." *Napier*, 636 F.3d at 225 (quoting *Anderson*, 477 U.S. at 248). To prevail on their exhaustion argument at summary judgment, Jenkins and CoreCivic must show that no reasonable jury could find that the Jeffersons exhausted their available administrative remedies.

Jenkins and CoreCivic have presented evidence that TTCC employs a three-level grievance procedure in accordance with Tennessee Department of Corrections (TDOC) Policy 51.01. (Doc. Nos. 46, 46-1.) Under that policy, people who are incarcerated at TTCC may file a grievance to address issues related to their confinement, which is reviewed by TTCC's grievance chairperson (Level I). (Doc. Nos. 46, 46-1.) A grievant who is dissatisfied with the response he receives from the grievance chairperson may appeal the response to TTCC's grievance committee and warden (Level II). (Doc. Nos. 46, 46-1.) The warden's response may then be appealed to the TDOC deputy commissioner (Level III). (Doc. Nos. 46, 46-1.)

The sworn declaration of TTCC Grievance Coordinator Janel Holley states that, "[b]efore filing the Complaint, Andrew Jefferson never filed a grievance at [TTCC]" and that "Timothy Jefferson did not file any grievance in 2020 and did not file any grievances that addressed the COVID-19 pandemic or the response to the pandemic." (Doc. No. 46, PageID# 220, ¶¶ 5–7.) The Jeffersons dispute these assertions and have filed copies of signed inmate grievance forms dated May 2, 2020, in which both report that, on April 29, 2020, Jenkins moved people who had tested

positive for COVID-19 into their pod and did not provide proper personal protective equipment to those housed there. (Doc. No. 51-1.)

However, the Jeffersons do not assert, and the record contains no evidence to show, that they advanced these grievances through all three levels of TTCC's grievance process. Accordingly, although there is evidence to show that the Jeffersons did file grievances to address their potential exposure to COVID-19, there is no genuine dispute that they fully exhausted those grievances as required under TTCC's grievance policy. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (recognizing that a plaintiff must pursue all levels of the administrative procedure to satisfy the PLRA exhaustion requirement). Instead, the Jeffersons argue that the TTCC grievance process was not available to them because prison administrators failed to respond to their grievances within seven days, as is required under TDOC Policy 51.01(C)(1). (Doc. No. 51, PageID# 293.) In support of this argument, the Jeffersons have filed an "Inappropriate Grievance Notification" form signed by the TTCC's Grievance Chairperson and dated May 28, 2020, stating that Andrew Jefferson's grievance was "unable to be processed . . . due to time lapse[.]"[3] (Doc. No. 51-1, PageID# 301.)

TDOC Policy 51.01(C)(1) states that "[t]here will be a seven working-day time limit at Level I beginning on the day the grievance begins to be processed" for the grievance chairperson to provide a response. (Doc. No. 46-1, PageID# 225.) But TDOC Policy 51.01(D) provides that, "[i]f a time limit expires at any stage of the process without the required response, the grievant may move the grievance to the next stage of the process, unless the inmate agrees in writing to a

---

[3] Under the heading "THIS GRIEVANCE IS UNABLE TO BE PROCESSED DUE TO YOU NOT FOLLOWING POLICY," the Grievance Chairperson wrote, "Due to time lapse, if you are still interested in filing this Grievance, please sign yes and send it back." The Chairperson then wrote "yes" next to a blank line, which Andrew Jefferson signed. (Doc. No. 51-1, PageID# 301.)

9

fixed extension of the time limit for response." (*Id.* at PageID# 225.) Because the Jeffersons make no argument that they moved on to Level II of the process as Policy 51.01(D) allowed them to do, they cannot now show that they made affirmative efforts to advances their grievances through the avenues available to them. *Napier*, 636 F.3d at 223–24. Thus, they cannot show that the process was unavailable. *See Belser v. Woods*, No. 17-2411, 2018 WL 6167330, at *2 (6th Cir. July 6, 2018) (holding that plaintiff who did not receive timely response to his grievance but did not forward his grievance to the next step of the grievance process as the policy allowed had not shown that he was unable to exhaust his administrative remedies); *Pool v. Klenz*, No. 17-3426, 2018 WL 1989637, at *3 (6th Cir. Jan. 17, 2018) (holding that plaintiff who alleged that prison official did not respond to his grievance filings had not demonstrated that the grievance process was unavailable because the applicable grievance policy "provided for steps [plaintiff] should have taken in that eventuality that would have allowed for him to continue the process").

The record contains no evidence from which a reasonable jury could find that the Jeffersons exhausted their administrative remedies before filing suit. Accordingly, Jenkins and CoreCivic's motion for summary judgment should be granted. Because PLRA exhaustion is a complete defense to all claims raised by the plaintiffs, it is not necessary to address Jenkins and CoreCivic's alternative arguments for summary judgment.

## IV.     Recommendation

Based on the foregoing, the Magistrate Judge RECOMMENDS that Jenkins and CoreCivic's motion for summary judgment (Doc. No. 43) be GRANTED and the Jeffersons' motion for summary judgment (Doc. No. 50) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided.

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 20th day of December, 2021.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge